**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Malibu Media, LLC,**

        **Plaintiff,**           Civil Action No.: 12-CV-14105

      vs.          District Judge Victoria A. Roberts

         Magistrate Judge Mona K. Majzoub

**John Does 1-42**

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the Court are Motions filed by John Does 5, 15, 21, 23, and 39 to sever John Does 2-42 from this action and to quash a subpoena served on the John Does' Internet Service Provider(s). (Docket nos. 7, 9, 13, 15, and 17.)  The Motions were virtually identical as the noted defendants are all represented by the same counsel.  (*See id.*)  Likewise, Plaintiff filed virtually identical responses to Defendants' Motions.  (Docket nos. 10, 11, 22, 23, and 24.)  The Motions have been referred to the undersigned for consideration.  (Docket no. 25.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[1]

**I.  Recommendation**

For the reasons that follow, the Court recommends granting Defendants' Motions with regard to severing all Defendants from this matter, granting Defendants' Motions in part with regard to quashing the subpoenas at issue, granting John Doe 5's request for Protective Order, and Denying the remaining Defendants' request for a protective order as moot.  Therefore, the Court also

---

[1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

recommends dismissing John Does 6 - 33 and 39 from this matter without prejudice.

**II.     Report**

    **A.     Background**

In this copyright infringement case, Plaintiff Malibu Media, LLC, has brought suit against 42 unnamed "John Doe" defendants, alleging that they unlawfully reproduced, distributed, and displayed Plaintiff's copyrighted adult film, *Morning Tryst* (The Work), via BitTorrent, an online file-sharing protocol. (Docket no. 1.) Defendants are identified only by their individual Internet Protocol (IP) addresses. (*Id.*) Since filing this case, Plaintiff has voluntarily dismissed John Does 1-4, 34-38, and 40-42, leaving in this matter a total of 30 defendants: John Does 5-33 and 39. (Docket no. 32.) Immediately after filing its Complaint, Plaintiff filed a Motion for Leave to Serve Third-Party Subpoenas Prior to Rule 26(f) Conference in an attempt to ascertain Defendants' identities. (Docket no. 4.) The Court granted the Motion (docket no. 4), and John Doe 21 filed his Motion to Sever and Quash (docket no. 7). The Motions to Sever and Quash by John Does 5, 15, 23, and 39 followed.

This case is one of a continuing stream of cases in this Court and others wherein adult-film producers file suit against a "swarm" of unnamed individuals known only by their IP addresses; this is Plaintiff's 12th such case in this District alone. In these cases, the film producers allege that the defendants unlawfully downloaded copyrighted pornographic material using the BitTorrent file-sharing protocol.[2] In short, the BitTorrent protocol allows users to share a large computer file by

---

[2]This District has extensively discussed the nature of the BitTorrent file-sharing protocol as it relates to cases like the one at hand. *See, e.g.*, *Third Degree Films, Inc., v. John Does 1-72*, No. 12-14106, 2013 WL 1164024 (E.D. Mich. Mar. 18, 2013) (Grand, M.J.); *Malibu Media LLC v. John Does 1-28*, No. 12-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012) (Michelson, M.J.). Therefore, the Court will not re-describe the nature of the technology with a full, in-depth analysis.

breaking the file up into multiple, smaller parts. When the file is broken apart, the BitTorrent client software, installed on each user's computer, creates a unique "hash number," or a "digital fingerprint," that allows the software to identify the smaller pieces of the file and rebuild it after transfer. When a BitTorrent user is interested in a particular digital file (in this case, for example, the digital copy of The Work), the user can search the Internet for the ".torrent" file associated with the digital file of interest. Once downloaded, the .torrent file searches the Internet for the smaller pieces of the digital file, ultimately downloading those pieces to the user's computer and reassembling the larger file. By default, the BitTorrent client on the users' computers will then offer the unassembled pieces of the larger file for other users to download. This growing group of users sharing the smaller files with each other is referred to as a "swarm."

To build a case, the film producers hire an online investigative service, (usually) IPP Limited, which uses forensic software to identify the IP addresses that are reproducing or distributing the material in question. IPP then downloads copies of the allegedly infringing material, compares the files to the unique hash number associated with the swarm, and verifies that the pieces can be combined to recreate a fully playable copy of the movie. If so, IPP provides the film producers with the IP addresses associated with those downloads, and the film producers file their claims against all of the John Doe defendants, listed by their IP addresses. Here, Plaintiff alleges that "(a) [Defendant's are] jointly and severally liable[;] . . . (b) the infringement . . . was part of a series of transactions, involving the exact same torrent file containing of (sic) Plaintiff's copyright works (sic), and was accomplished by Defendants acting in concert with each other[;] and (c) there are common questions of law and fact [because] the claims against each of the Defendants are

identical and each . . . used the BitTorrent protocol."[3] (Docket no. 1 ¶ 10.) Defendants now move to sever the matter and quash the subpoenas served on the Internet Service Providers, arguing that there is no concerted action and that Plaintiffs are merely trying to coerce them into settlement. Defendants argue that, at most, they each allegedly committed the same violation in the same way; thus, Plaintiff should have to sue them individually. In the alternative, Defendants argue that the Court should enter a protective order allowing them to proceed anonymously.

### B. Applicable Law

Federal Rule of Civil Procedure 20 sets out the parameters for joining multiple defendants in a single action:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). But "[w]hether joinder should be permitted is 'a matter for the discretion of the district court.'" *Third Degree Films*, 2013 WL 1164024 at *5 (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). Pleading facts sufficient to support joinder is the plaintiff's burden. *See, e.g., Third Degree Films, Inc., v. John Does 1-36*, No. 11-15200, 2012 WL 2522151, *6 (E.D. Mich. May 29, 2012) (Michelson, M.J.).

"'The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Third Degree Films*, 2013 WL 1164024 at *5 (quoting *Patrick Collins, Inc., v. John Does 1-21*, 282 F.R.D. 161, 166 (E.D. Mich.

---

[3] Plaintiff's Complaints in their multiple cases are virtually identical, as are the Complaints filed by other film producers, including the grammatical errors. *See, e.g.*, *Third Degree Films, Inc.,* 2013 WL 1164024 at *4.

2012) (Randon, M.J.) (internal quotations omitted)). "Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b)." *Malibu Media LLC*, 2012 WL 7748917, at *5 (citations omitted). Rule 21 allows the Court "[o]n motion or on its own, . . . at any time, on just terms, [to] add or drop a party." Fed. R. Civ. P. 21. Rule 42 allows the court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Rule 20 should be viewed in light of the overarching policy of Rule 1 which requires that the rules 'be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 321 n.2 (E.D. Mich. Sept. 28, 2013) (Hood, J.) (quoting Fed. R. Civ. P. 1).

**C.    Analysis**

While Rules 20 and 21 provide the necessary framework, the issue at hand is whether the joinder of defendants is proper in BitTorrent cases such as this one. Federal District Courts across the country are split on this issue (including judges in this District). *See Third Degree Films, Inc.*, 2013 WL 1164024 (finding joinder inappropriate), *Malibu Media, LLC, v. John Does 1-15*, No. 12-13667, 2013 WL 136239 (E.D. Mich. Jan 10, 2013) (Steeh, J.) (finding joinder inappropriate), and *Patrick Collins, Inc., v. John Does 1-23*, No. 11-15231, 2012 WL 1019034 (E.D. Mich. Mar 26, 2012) (Steeh, J.) (finding joinder inappropriate); *but see Patrick Collins, Inc., v. John Does 1-28*, No. 12-13670, WL 2013 WL 359759 (E.D. Mich. Jan 29, 2013) (Luddington, J.) (finding joinder appropriate), *Malibu Media, LLC,* 2012 WL 7748917 (finding joinder appropriate), *Patrick Collins, Inc.,* 286 F.R.D. 319 (finding joinder appropriate and adopting Report and Recommendation, *Patrick Collins, Inc.,* 282 F.R.D. 161), and *Third Degree Films, Inc.,* 2012 WL 2522151 (finding joinder appropriate). Thus, this Court is tasked with choosing "one of two reasonable views." *Malibu Media LLC*, 2012 WL 7748917 at *5.

### 1. A Common Question of Law or Fact

The Court agrees with the near-universal view in these matters that Plaintiff has sufficiently pled a "question of law or fact common to all defendants [that] will arise in the action." Moreover, Defendants do not make any argument to the contrary. (*See* docket no. 7.) Plaintiff alleges that Defendants each installed a BitTorrent client on their computer, downloaded a copy of The Work containing the SHA-a hash value identified in the Complaint, and participated as part of a swarm that redistributed The Work. (*See* docket no. 1.) Plaintiff brings claims of Direct Copyright Infringement and Contributory Copyright Infringement against each Defendant, jointly and severally. Therefore, Plaintiff's Complaint meets this requirement.

### 2. The Same Series of Transactions or Occurrences

Whether Defendants' actions arise "out of the same transaction, occurrence, or series of transactions or occurrences," however, is heavily disputed. And "'[t]he fact that multiple courts, in well-reasoned opinions, have arrived at opposing conclusions suggests that there is no clearly correct answer to this question.'" *Third Degree Films*, 2013 WL 1164024 at *6 (quoting *Malibu Media LLC*, 2012 WL 7748917 at *5 (quoting *Next Phase Distribution, Inc., v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y 2012))).

Courts that find joinder appropriate in cases such as this rely on the principle that each defendant contributed to the infringement by participating in the swarm, despite whether any defendant connected directly to any other defendant. *See, e.g.*, *Third Degree Films, Inc.,* 2012 WL 2522151 at *9 (citing *Patrick Collins, Inc., v. Does 1-39,* No. 12-00096, 2012 WL 1432224, at *3 (D.Md. Apr. 24, 2012)) ("In other words, each defendant allegedly participated in the same swarm for the same digital encoding of the Work and thereby jointly contributed to the illegal distribution of the Work to others. By undoubtedly uploading to other peers in the swarm, which enabled those

peers to upload to still other peers, all 36 Doe Defendants jointly contributed to either growing the swarm or maintaining its existence. Each defendant contributed to an enterprise, the sole purpose of which was to distribute a particular version of Plaintiff's Work."). As Magistrate Judge Randon explained, "in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP." *Patrick Collins, Inc.,* 282 F.R.D. at 165. Thus, these courts find that the allegations against the defendants are "logically related," because they contain "shared, overlapping facts," and therefore, they arise out of the same transaction or occurrence. *See, e.g., Third Degree Films, Inc.,* 2012 WL 2522151 at *9 (citing *In re EMC Corp.*, 677 F.3d 1351, 2012 WL 1563920 (Fed. Cir. May 4, 2012)).

Courts holding to the contrary rely on the principle that nothing in the plaintiffs' complaints indicates that any defendant connected in any way to any another defendant or that the defendants participated in any distribution of the Work; at most, the plaintiffs' investigations show that these defendants each individually downloaded the copyrighted material and uploaded it to IPP, the plaintiffs' own investigators. *See, e.g.*, *Patrick Collins, Inc.*, 2012 WL 1019034 at *3-4 (citing *Hard Drive Prods., Inc. v. Does 1–188*, 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011); *K–Beech, Inc. v. John Does 1–41*, No. V–11–46, 2012 WL 773683 (S.D. Tex. March 8, 2012)) ("Each of the IP addresses connected to the investigative server at different times and dates to download a piece of the Work and there is no allegation that any of the computers associated with the IP addresses downloaded or uploaded pieces of the Work with each other. That plaintiff has provided evidence that each of the defendants connected to the investigative server to download a piece of the Work does not show that each of the IP addresses acted in concert with all the other addresses in the swarm."). Moreover, "The absence of information concerning the number of total users in the

swarm, coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were simultaneously sharing pieces of plaintiff's Work." *Id.* (citing *Hard Drive Prods.*, 809 F.Supp.2d at 1163.)

This Court, however, is persuaded by one particular conclusion. In *Patrick Collins, Inc., v. Does 1*, No. 12-1154, 2012 WL 5879120 (E.D.N.Y., Nov. 20, 2012), the court observed the following:

> "[T]he chain of sharing transactions might easily be broken if a Seeder joins the swarm who obtained a copy of the same file through a different source (such as a different swarm or through other file sharing methods)," thus making it "possible that any Defendant could have received the file from an intervening sharer, and would have no connection to either the Initial Seeder or the other Defendants."

*Third Degree Films, Inc.,* 2012 WL 2522151 at *6 n.6 (quoting *Patrick Collins, Inc.,* 2012 WL 5879120, at *7-8). Plaintiff's Complaint here fails in the same regard. Thus, even assuming Plaintiff's allegations are true, Plaintiff has not met its burden of pleading the "shared, overlapping facts" necessary to create a logical relationship between Defendants' acts. Therefore, the Court recommends granting Defendants' Motions to sever.

### 3. The Court's Discretion

Even if Plaintiff had met its burden under Rule 20(a)(2), the Court recommends finding that joinder is not warranted in this case.

> Courts have considered a number of factors when deciding whether defendants joined in a BitTorrent lawsuit should be severed:
>
> > (i) the likelihood that each John Doe defendant will assert different defenses, thereby adding factual and legal questions that are not common among all defendants, (ii) many John Doe defendants are proceeding pro se, and will therefore incur significant expense serving papers and attending depositions of all other parties to the lawsuit, (iii) the likelihood that many of the John Doe defendants are not the actual individuals who illegally downloaded the motion pictures in question, (iv) the likelihood that joinder will facilitate
>  >
>  > coercive settlements among the John Doe defendants; and (v) plaintiff's

avoidance of paying filing fees by pursuing mass actions.

*Malibu Media, LLC.,* 2012 WL 7748917 at *5-6 (citing *Malibu Media, LLC v. John Does 1–16*, No. 12–2078, 2012 WL 4717893, at *8 (E.D. Pa. Oct.3, 2012)).

In *Third Degree Films, Inc.*, 2013 WL 1164024 at *6-8, the court discussed these factors in depth. The plaintiff's counsel acknowledged that approximately 95% of the John Doe defendants will assert the "it wasn't me" defense.[4] *Id.* at 6, n.7. Each of these individual claims involves "an unquantifiable number of different factual scenarios," which would require the Court to "give individualized attention to each claim and each defendant." *Id.* at 6 (internal quotations and citations omitted). Thus, while the claims against each Defendant may share common issues of law and fact, "the crux of the cases . . . will be the individual factual claims of each defendant." *Id.* (quotation omitted). Moreover, "[b]ecause Plaintiff may only obtain the identity of the subscriber to the IP address, which may be shared by multiple users, including unauthorized ones, there is a real risk of 'false positives,' and the joinder and identification of defendants by IP address would lead to cumbersome motion practice and, ultimately, mini-trials involving different testimony and evidence." *Id.* at 7 (citing *Malibu Media, LLC v. Doe*, No. 12–CV–575–J–34TEM, 2013 WL 525352, at *4 (M.D. Fla. Feb.13, 2013)). Therefore, like the *Third Degree Films* court, this Court "'sees little, if any, judicial economy in allowing the claims to proceed together.'" *Id.* (quoting *Third Degree Films, Inc. v. Does 1–47*, No. 12–2391, 2012 WL 4005842, at *4 (D. Colo. Sept.12, 2012). Additionally, the "logistical and administrative complications that joinder of plaintiff's claims would create [will likely] transform[] what 'appears to be a relatively straightforward case . . . into a cumbersome procedural albatross.'" *Id.* at 7 (quoting *In re BitTorrent*

---

[4]Notably, the parties in this matter are represented by the same counsel as the parties in *Third Degree Films, Inc.*, 2013 WL 1164024 (any many of the other cases in this District).

*Copyright Infringement Cases*, Nos. 12–1188 et al., 2013 WL 501443, at *6 (C.D. Ill. Feb.11, 2013)) (omission in original). For example, case management would require extensive meetings and hearings, Plaintiff's Complaint would require multiple amendments as each John Doe is identified, defendants who are identified early would have to wait as additional defendants are identified, and each defendant (individually or through his/her various attorneys) would have to serve every other defendant with copies of pleadings and other submissions, all at great cost. *Id.* (citing *Malibu Media*, 2013 WL 525352 at *5). Even Plaintiff "will be hard-pressed to oppose motions filed by each defendant within the time allotted," which will likely lead to additional filings and more conferences. *Id.*

Finally, as Defendants contend, cases such as this may run a risk that Plaintiff is merely attempting to avoid filing fees or coerce settlements out of defendants who do not wish to be identified on the record. (*See* docket no. 7 at 12.) This "guilt-by-association rationale," however, should not, by itself, prevent Plaintiff from proceeding; notably, Defendants do not assert that Plaintiff or Plaintiff's counsel have actually has engaged in such tactics. *See Malibu Media, LLC.*, 2012 WL 7748917 at *9 (quoting *Third Degree Films*, 2012 WL 2522151 at *11). And while some courts have considered the potential avoidance of filing fees as a strike against the plaintiffs in these cases, this Court will not do so because such a finding requires circular logic.[5]

"Some courts . . . have recognized the fairness and manageability concerns discussed above but nonetheless permitted joinder, noting the early stage of the proceedings and the possibility that severance could be revisited later in the case." *Third Degree Films, Inc.*, 2013 WL 1164024 at *9 (citations omitted). While such a decision is a well-balanced approach, this Court does not believe

---

[5]In finding that the avoidance of filing fees is a basis for holding joinder improper, the court must first find that joinder was, in fact, improper; that is, if joinder were appropriate, the plaintiff would not have "avoided" any filing fees.

that delaying a decision is appropriate.  Plaintiff has already dismissed several Defendants from this action, demonstrating that this case "is following the well-worn path . . . that plaintiff did not join defendants here in order to more fairly and efficiently adjudicate its claims against [Defendants] before this court."  *Id.* at *11.  Moreover, contrary to Plaintiff's assertion, Plaintiff seems fully capable of proceeding against Defendants on an individual basis.[6]  Therefore, the Court recommends granting Defendants' Motions to Sever, thereby dismissing John Does 6-33 and 39 without prejudice and leaving John Doe 5 as the sole, remaining defendant.

### 4. Defendants' Motions to Quash

In light of the Court's recommendation, all of the subpoenas issued in this matter should be quashed except as related to John Doe 5.  Plaintiff should be required to notify each ISP that the subpoenas have been quashed.

### 5. Defendants' Motions for Protective Order

In his motion, John Doe 5 requests that the Court issue a protective order precluding Plaintiff "from amending its Complaint to identify Doe 5 by name unless and until discovery is conducted by the Plaintiff that provides evidence supporting the Plaintiff's allegation that doe 5 infringed upon the Plaintiff's copyright."  (Docket no. 13 at 27.)  Additionally, John Doe 5 asks that the Court "bar Plaintiff from using any information ultimately disclosed [under the subpoena] for any purpose other than protecting Plaintiff's rights as set forth in its complaint."  (*Id.*)  Plaintiff responds as follows:

> Plaintiff does not object to a protective order that would enable Defendant to proceed anonymously and prevent Plaintiff from publically naming Defendant until after discovery is conducted. Further, Plaintiff has no intention or desire to use the information provided in the subpoena response for any reason other than to enforce its rights as set forth in the complaint. Plaintiff's goal is not embarrass the

---

[6] As of the date of this Report and Recommendation, Plaintiff has 29 cases outstanding in this District stylized as "Malibu Media, LLC, v. John Doe Subscriber Assigned IP Address . . . ."  *See, e.g.*, No. 13-11395 (E.D. Mich. 2013) (filed March 28, 2013).

> Defendants or force any unwarranted settlements. Plaintiff simply seeks redress for the massive infringements it experiences daily and to be made whole for the significant loss it has suffered.

(Docket no. 22 at 5.)

Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had, or that the disclosure or discovery be limited to certain matters. Fed.R.Civ.P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir.2001). To show good cause, the movant must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on conclusory statements. *Id.*

While some courts have declined to issue protective orders in cases such as this, *see e.g.*, *Third Degree Films*, 2012 WL 2522151 at 12, this Court agrees with those holding to the contrary, *see, e.g.*, *Malibu Media, LLC*, 2012 WL 7748917 at 14. As the *Malibu Media* court noted, this decision is not due to the nature of The Work but because of the high rate of "false positives" returned on alleged infringers. *Id.* at 13-14 (stating that "a significant portion of the subscribers identified by ISPs may not actually be the BitTorrent users who downloaded the Work"). Moreover, Plaintiff does not oppose John Doe 5's Motion. Therefore, the Court recommends granting John Doe 5's Motion for Protective Order.

**D.     Conclusion**

For the reasons stated herein, the Court recommends granting Defendants' Motions with regard to severing Defendants 6 - 33 and 39 from this matter, granting Defendants' Motions in part with regard to quashing the subpoenas at issue, granting John Doe 5's request for Protective Order,

and Denying the remaining Defendants' request for a protective order as moot. Therefore, the Court also recommends dismissing John Does 6 - 33 and 39 from this matter without prejudice.

### III.     Notice to the Parties

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate
to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: April 10, 2013                       s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: April 10, 2013                    s/ Lisa C. Bartlett
                                               Case Manager